## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jason M. G.,

                          Case No. 23-CV-0084 (JFD)

           Plaintiff,

v.                                 **ORDER**

Martin J. O'Malley, Commissioner of
Social Security Administration,

           Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jason M. G. seeks judicial review of a final decision by the Commissioner of the Social Security Administration, which denied the Plaintiff's application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 18) and Defendant's Brief in Support of the Commissioner's Final Decision (Dkt. No. 21). Plaintiff raises two issues for judicial review. The first issue is whether the administrative law judge ("ALJ") complied with the Appeals Council's remand order to address and resolve possible conflicts between the testimony of a vocational expert and the *Dictionary of Occupational Titles*. The second issue is whether the ALJ properly rejected a functional limitation opined by Dr. Cheryl Buechner. Defendant opposes Plaintiff's motion and asks the Court to affirm the final decision. As set forth below, the Court concludes that the ALJ did not err in either respect and therefore denies Plaintiff's Motion for Summary Judgment and affirms the Commissioner's final decision.

1

## I.      Background

Plaintiff was 38 years old on the alleged onset-of-disability date, January 15, 2019. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 144.)[1] He has completed four or more years of college and has past employment as a building engineer, concrete leveler, delivery driver, excavating laborer, and parts associate. (R. 498–99, 521.) Plaintiff is also a United States Army Veteran. (R. 887.) His medical diagnoses include posttraumatic stress disorder ("PTSD"), a traumatic brain injury, depression, insomnia, dizziness, migraines, and low back pain. (R. 700, 702, 729, 886–87, 947, 1000.)

### A.      Dr. Cheryl Buechner's Opinion

On November 10, 2021, at the request of an ALJ, Dr. Cheryl Buechner provided a medical opinion in response to a medical interrogatory about Plaintiff's medical impairments. (R. 870, 879–81.) After reviewing the evidence provided to her by the ALJ, Dr. Buechner opined that Plaintiff would be (1) mildly limited in understanding, remembering, or applying information; (2) mildly limited in interacting with others; (3) moderately limited in concentrating, persisting, or maintaining pace; and (4) moderately limited in adapting or managing himself. (R. 880.) Dr. Buechner explained that all four limitations were consistent with other evidence from consultative examinations and from the U.S. Department of Veterans Affairs ("VA"). (R. 880.) Specifically, with respect to the first category, the "mild" rating was based on testing, which showed that expected cognitive functioning and novel memory tasks were in the average range,

---

[1] The administrative record is filed at Dkt. No. 7. The record is consecutively paginated, and the Court cites to that pagination rather than ECF number and page.

compared to the general population. (R. 880.) The second category of limitation was "mild" based on observations by multiple providers. (R. 880.) The rationale for the "moderate" rating of the third category came from Plaintiff's consistent self-reports of nightmares and insomnia, and other physical concerns. (R. 880.) The moderate rating for the fourth category was consistent with the VA rating of 70% for PTSD and ongoing treatment. (R. 880.) Dr. Buechner recommended "a low stress position with few urgent changes to routine." (R. 881.)

In January 2022, Plaintiff's representative sent several clarifying interrogatory questions to Dr. Buechner. (R. 31, 1103–05.) In relevant part, Dr. Buechner checked the box "seriously limited, but not precluded" for the following abilities or aptitudes: sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. (R. 1103–04.) Dr. Buechner wrote that her "previous ratings remain consistent with [Plaintiff's] presentation to his various healthcare providers." (R. 1104.) When asked to define a "low stress position," Dr. Buechner wrote, "one with little or no expectation of in-the-moment problem-solving and few if any changes to routine." (R. 1104.) Finally, Dr. Buechner indicated that, on average, Plaintiff would be absent from work about four days per month due to his impairments or treatment. (R. 1105.)

### B.      Procedural History

Plaintiff applied for DIB on August 14, 2019, alleging he had not been able to work since January 15, 2019, due to his mental and physical impairments. (R. 144–45.) His alleged impairments were PTSD, asthma, depression, traumatic brain injury, spondylolisthesis, back injury, and heartburn. (*Id.*) Plaintiff's DIB application was denied at both the initial review and reconsideration stages. Plaintiff requested an administrative hearing before an ALJ, and that hearing—which was the first hearing on Plaintiff's DIB application—occurred on July 24, 2020. (*See* R. 190.)

On August 7, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled. (R. 187–206.) The Court need not describe the findings and conclusions the ALJ made in that decision, because Plaintiff requested review of the August 7, 2020 decision by the Appeals Council, and on November 4, 2020, the Appeals Council granted review and remanded the case back to the ALJ. (R. 211.)

In the order for remand, the Appeals Council noted that the ALJ had found Plaintiff could perform the job of "kitchen helper." (R. 213.) That position, as defined by the *Dictionary of Occupational Titles*, requires occasional exposure to extreme cold. (R. 213 (citing DOT 318.687-010).) Plaintiff's residual functional capacity ("RFC"),[2] as assessed by the ALJ, however, contained the limitation "would not be able to work in extreme cold." (R. 213.) The ALJ's decision did not explain how to resolve this contradiction. (R. 213.) The RFC also contained a limitation against working around "concentrated air pollutants,"

---

[2] RFC is a measure of "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

but per the *Dictionary of Occupational Titles*, the kitchen helper job requires frequent

exposures to environmental pollutants. (R. 214.) Thus, the Appeals Council concluded that

additional vocational expert testimony was needed to reconcile the conflict. (R. 214.) The

Appeals Council therefore directed the ALJ on remand to

> [o]btain supplemental evidence from a vocational expert to clarify the effect
> of the assessed limitations on the claimant's occupational base (Social
> Security Ruling 83-14). The hypothetical questions should reflect the
> specific capacity/limitations established by the record as a whole. The
> Administrative Law Judge will ask the vocational expert to identify examples
> of appropriate jobs and to state the incidence of such jobs in the national
> economy (20 CFR 404.1566). Further, before relying on the vocational
> expert evidence the Administrative Law Judge will identify and resolve any
> conflicts between the occupational evidence provided by the vocational
> expert and information in the Dictionary of Occupational Titles (DOT) and
> its companion publication, the Selected Characteristics of Occupations
> (Social Security Ruling 00-4p).

(R. 214.) To comply with this directive, the Administrative Law Judge should "offer the

claimant an opportunity for a hearing, take any further action needed to complete the

administrative record and issue a new decision." (R. 214.)

On remand, the ALJ who had issued the original written decision held a

supplemental hearing on March 4, 2021 (R. 60–83), and a second supplemental hearing on

January 4, 2022 (R. 84–98). (*See* R. 349.)

A different ALJ held a fourth hearing on July 20, 2022. (R. 99–143, 399, 404.)

Plaintiff and vocational expert Dr. Alina Sala, Ed.D., testified at that hearing. Plaintiff

testified that he was 42 years old at the time of the hearing, had a bachelor's degree, and

was medically retired from the Army. (R. 109–10.) He further testified he could not work

at that time due to PTSD, back pain and an injured back, hip pain and instability, sleep

deprivation, constant headaches, irritability, dizziness, anxiety, and drifting thoughts. (R. 115–18.)

The second ALJ posed a hypothetical question to Dr. Sala to determine what jobs someone with Plaintiff's characteristics and limitations could do. Dr. Sala was asked to consider a person of Plaintiff's age, education, and work experience,

> who is capable of performing at the light exertional level, but the person is further limited in that they can only occasionally climb stairs and ramps. They can never climb ladders or scaffolds. They can occasionally stoop, kneel, crouch, and crawl. They . . . can only have occasional exposure to hazards such as unprotected heights and moving mechanical parts, slipper [sic], wet surfaces, extreme cold, dust, odors, fumes, and other pulmonary types of irritants.
>
> Additionally, they are limited to understanding, remembering, and carrying out simple instructions. They can only have occasional interaction with supervisors, coworkers, and the public. They can only make simple work-related decisions and only tolerate occasional change in work location. And they are unable to work at a strict production rate like the type of rate required to work on an assembly line.

(R. at 137.) Dr. Sala testified that such a person could not perform Plaintiff's past work but could work as a mail clerk, router clerk, or checker. (R. 138–39.) Dr. Sala attested that her testimony was consistent with the *Dictionary of Occupational Titles*. (R. 139.)

On August 31, 2022, the second ALJ issued an unfavorable decision, finding Plaintiff not disabled. (R. 13–36.) The ALJ followed the familiar five-step sequential analysis outlined in 20 C.F.R. § 404.1520. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since January 15, 2019. (R. 18.) At the second step, the ALJ found that Plaintiff

6

had the following severe impairments: degenerative disc disease of the lumbar spine, asthma, traumatic brain injury, headaches, obesity, PTSD, and depression. (R. 18.) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 19.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). As part of the RFC assessment, the ALJ considered evidence from Dr. Buechner. As recounted by the ALJ, in November 2021, Dr. Buechner opined that Plaintiff "had up to moderate limitations in the areas of mental functioning" and "would be capable of a 'low-stress position with a few urgent changes to routine.'" (R. 31.) In January 2022, Dr. Buechner clarified her opinion to find that Plaintiff "would have limitations in his ability to perform unskilled work and would be absent from work about four days a month." (R. 31.) The ALJ found the limitations and clarification partially persuasive, articulating five reasons. First, the limitations were based on Dr. Buechner's impartial review of the medical evidence. (R. 31.) Second, the November 2021 opinion included a rationale for the limitations, which bolstered its persuasiveness. (R. 31–32.) Specifically, Dr. Buechner found that Plaintiff's memory was average compared to the general population and that his concentration, persistence, and pace were affected by insomnia. (R. 32.) Third, the November 2021 opinion was consistent with consultative psychological examinations showing good attention, concentration, and cognitive functioning. (R. 32.) Fourth, the November 2021 opinion was consistent with the longitudinal evidence of record, which showed conservative mental health treatment. (R. 32.) Fifth, although most of the January

2022 clarifications were also generally consistent with the record, the ALJ found the opined

limitation that Plaintiff would be absent from work four days a month was not supported

by or consistent with the record. (R. 32.)

Based on the ALJ's consideration of Dr. Buechner's opinion and on all of the other

relevant evidence of record, the ALJ assessed Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work as
> defined in 20 [C.F.R. §] 404.1567(b) except the claimant (1) can occasionally
> climb stairs and ramps; (2) can never climb ladders or scaffolds; (3) can
> occasionally stoop, kneel, crouch and crawl; (4) can have occasional
> exposure to hazards such as unprotected heights and moving mechanical
> parts; (5) can have occasional exposure to slippery, wet surfaces; (6) can have
> occasional exposure to extreme cold; and (7) can have occasional exposure
> to dust, odors, fumes and other pulmonary irritants. Further, the claimant
> (1) can understand, remember and carry out simple instructions; (2) can have
> occasional interaction with supervisors, coworkers and the public; (3) can
> only make simple, work-related decisions; (4) can only tolerate occasional
> change in work location; and (5) cannot work at a strict production rate such
> as the rate required to work on an assembly line.

(R. 23.) With this RFC, the ALJ concluded, Plaintiff could not perform any of his past

relevant work, but he could work as a mail clerk, router clerk, or checker. (R. 36.)

Consequently, the ALJ found Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review of the second ALJ's

August 31, 2022 decision. (R. 1.) This made the second ALJ's decision the final decision

of the Commissioner for the purpose of judicial review.

## II.    Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining

whether substantial evidence in the record as a whole supports the decision, 42 U.S.C.

§ 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social*

*Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

III.    **Discussion**

    A.    **Whether the ALJ Complied with the Appeals Council's Remand Order Is Not Subject to Judicial Review.**

Plaintiff argues that the ALJ did not comply with the Appeals Council's remand order to address and resolve possible conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles* regarding the position of "kitchen helper." (Pl.'s Mem. Supp. Mot. Summ. J. at 15, Dkt. No. 19.) On remand, the ALJ did not address and resolve the apparent conflicts, but rather changed the RFC so that the supposed conflicts no longer existed. This, Plaintiff contends, was an error.

Under 20 C.F.R. § 404.977(b), an ALJ on remand "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order." The question is whether an ALJ's failure to comply with an Appeals Council's remand order is subject to judicial review under 42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has not addressed the issue, but other district courts in this Circuit have determined that an ALJ's failure to follow the Appeals Council's remand instructions is not subject to judicial review. *E.g., Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) ("Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review."); *King v. Berryhill*, No. 5:16-CV-00079-SWW-JTR, 2017 WL 1095087, at *2 (E.D. Ark. Feb. 24, 2017)

(concluding that the ALJ's failure to comply with the Appeals Council's remand order was "an internal agency issue that became moot when the Appeals Council later declined to review the ALJ's . . .. decision"), *R. & R. adopted*, 2017 WL 1100432 (E.D. Ark. Mar. 22, 2017); *Sanders v. Astrue*, No. 4:11-CV-1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) ("The issue whether an ALJ complied with a remand order evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order."), *R. & R. adopted*, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013).

The cases which Plaintiff cites are not on point. Both of those cases addressed whether an ALJ followed a *court's* remand order during the administrative proceeding that followed judicial review, not whether an ALJ followed the Appeals Council's remand order during the administrative proceeding that preceded judicial review. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989); *Richard M. v. Berryhill*. No. 17-CV-5125 (ADM/BRT), 2019 WL 1075885, at *3 (D. Minn. Mar. 7, 2019).

This Court is persuaded by the reasoning of *Vanepps*, *King*, and *Sanders*. Title 42 U.S.C. § 405(g) authorizes judicial review only to determine whether substantial evidence supports the Commissioner's factual findings and whether the ALJ committed an error of law. *See Vanepps*, 2019 WL 1239857, at *7. Furthermore, whether an ALJ complied with the Appeals' Council remand order is an internal agency matter that the Appeals Council necessarily considers when it decides whether to adopt the ALJ's written decision as the

Commissioner's final decision. *King*, 2017 WL 1095087, at *2; *Sanders*, 2013 WL 1282330, at *11.

Of final note, the wording of the Appeals Council's remand order did not bind the second ALJ to any findings or conclusions made by the first ALJ. The Appeals Council vacated the entire first written decision, and a decision vacated by the Appeals Council is not a final decision. *See Aguiniga v. Colvin*, 833 F.3d 896, 900–01 (8th Cir. 2016). The effect of the vacated decision was that "nothing in this case was settled fact or law." *Id.* at 901. Thus, the second ALJ was not obligated to assess Plaintiff with the same RFC or to find that Plaintiff could perform the job of kitchen helper.

## B.    The ALJ Properly Considered Dr. Buechner's Opinion.

Plaintiff argues that the ALJ's consideration of Dr. Buechner's opined limitation that Plaintiff would be absent from work four days a month was cursory and conclusory, and thus legally insufficient.

Title 20 C.F.R. § 404.1520c sets forth the standards under which an ALJ considers medical opinion evidence such as the interrogatory answers from Dr. Buechner. An ALJ considers how "persuasive" an opinion is according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)–(5). The "most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The regulatory language pertaining to supportability provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In other words, supportability looks to how well the medical source justifies their own opinion, and consistency looks to how well the medical source's opinion fits with evidence from other sources.

Plaintiff argues that the ALJ's rejection of the work-absence limitation was legally insufficient. The Court disagrees. The ALJ specifically addressed this particular limitation in her discussion of Dr. Buechner's medical opinion and stated there was "no rationale or explanation" provided for the limitation, "and it is not consistent with the longitudinal evidence of record." (R. 32.) Therefore, the ALJ concluded, the limitation "is unsupported and not consistent with the evidence of record." (R. 32.) These statements were accurate. Dr. Buechner did not provide support for or otherwise justify the work-absence limitation. She simply checked the box for "four days per month," without explanation or citations to evidence of record for that limitation. (*See* R. 1105.) There is no other evidence of record from Dr. Buechner that would support that limitation. To the contrary, Dr. Buechner opined in November 2021 that Plaintiff would be only mildly limited in understanding, remembering, or applying information, and in interacting with others; and moderately limited in concentrating, persisting, or maintaining pace, and in adapting or managing

13

himself. (R. 880.) Those limitations would not support a limitation of being absent from work four days a month.

As to the consistency factor, Dr. Buechner did not identify any evidence of record that was consistent with her finding that Plaintiff would be absent from work four days a month. On the other hand, there is ample evidence of record, which the ALJ cited elsewhere in the written decision, that is inconsistent with the four-day-per-month work-absence limitation. For example, Dr. P.E. Shields, a state agency psychological consultant, found that Plaintiff could concentrate on, understand, and remember tasks; interact appropriately with others; follow an ordinary routine; and tolerate routine stressors. (R. 158–60.) VA nurse Sarah Thompson recorded a progress note reflecting that Plaintiff presented as awake, alert, and interactive, and had a full range of affect, a good mood, intact attention, full fund of knowledge, and appropriate insight and judgment. (R. 719.) VA staff physician John Vukelich, M.D., recorded a progress note documenting good eye contact, calm motor movements, normal speech, a constricted affect, a very mildly to moderately depressed mood, logical and goal-oriented thought processes, good and clear judgment, and normal attention. (R. 732.) Finally, Dr. Monique Bourdeaux, who performed a psychological consultation, described Plaintiff as relaxed, alert, cooperative, attentive, coherent, logical, goal-directed, oriented, and in touch with reality; and with clear and normal speech, normal affect, and a low mood that was likely related to PTSD. (R. 750.) Dr. Bourdeaux opined that Plaintiff could understand, remember, and follow directions; sustain attention and concentration; carry out work tasks with reasonable persistence and pace; and moderately tolerate the mental stressors of an entry-level workplace. (R. 752.)

14

In sum, the ALJ properly considered Dr. Buechner's opinion and articulated why the ALJ considered the opinion only partially persuasive.

## IV.    Conclusion

The ALJ's August 31, 2022 written decision is supported by substantial evidence, and the ALJ committed no legal error. Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is **DENIED**; and

2. The relief requested in Defendant's Brief in Support of the Commissioner's Final Decision (Dkt. No. 21) is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


 Date: March 13, 2024                             *s/ John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge